The Honorable John C. Coughenour

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  | FRANCENE GREWE and LORI EBERHARD, on
10 | behalf of themselves and all others similarly
   | situated,

No. 2:16-cv-00577-JCC

11 |               Plaintiffs,

JOINT BRIEFING IN SUPPORT OF
SECOND MOTION FOR APPROVAL
OF FLSA COLLECTIVE ACTION
SETTLEMENT AND AWARD OF
FEES

12 |      v.

13 | COBALT MORTGAGE, INC.,

14

15 |               Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I.    INTRODUCTION

Plaintiffs Francene Grewe and Lori Eberhard and Defendant Cobalt Mortgage, Inc. (collectively, the "Parties") jointly submit this additional briefing as ordered by the Court to address certain issues raised by the Court with regard to the approval of a proposed FLSA Collective Action Settlement in this matter previously submitted by the  Parties.  The Parties maintain that the prior settlement is a fair and reasonable resolution of the Parties' bona fide disputes as to liability and damages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Therefore, after reviewing this additional briefing, the Parties respectfully request that the Court approve their settlement.

## II.    PROCEDURAL BACKGROUND

### A.    The Parties Agreed To Mediate After Cobalt Refused To Absorb New Job Classifications Into The Existing *Wheeler* Settlement

The procedural background of this *Grewe* case is informed by the procedural history and settlement of the *Wheeler* matter approved by the Court earlier this year.  In *Wheeler*, Rowdy Meeks, counsel for Plaintiffs, represented Plaintiff Shannon Wheeler, a former Cobalt Mortgage Loan Officer ("MLO").  Declaration of Rowdy B. Meeks ("Meeks Decl."), ¶ 4.  Wheeler filed a collective action against Cobalt seeking unpaid overtime.  The parties settled that case and the Court approved the settlement.  During the course of administering the settlement, Grewe and Eberhard, two former Cobalt employees, learned about the suit and contacted Mr. Meeks.  Meeks Decl., ¶ 4.  Cobalt employed Grewe as a Production Partner and Eberhard as an MLO Assistant ("MLOA").  Complaint, ¶¶ 1-2 (Dkt 1).  Neither job classification was covered by the *Wheeler* settlement as it was limited to MLOs.  Three months after the *Wheeler* settlement had been approved, Meeks contacted Cobalt's counsel and asserted that Cobalt had also failed to pay all Production Partners and MLOAs in the United States for all overtime hours worked.  Meeks asked Cobalt to expand the *Wheeler* settlement to include the two job classifications and increase the gross settlement amount proportionate to the number of additional employees.  Meeks Decl., ¶ 5; Declaration of Taylor Ball ("Ball Decl."), ¶ 2.  Cobalt did not agree with Meeks' proposal

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT - 2
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   because the *Wheeler* case had been closed and MLOs, Production Partners, and MLOAs are

2   three distinct job classifications with different responsibilities and compensation structure.

3   Meeks Decl., ¶ 5; Ball Decl., ¶ 3.  Specifically, the compensation model for MLOs and

4   Production Partners, who are paid on a commission basis, differs dramatically from that of

5   MLOAs, who are paid based on a fixed hourly rate or a fixed hourly rate supplemented with

6   commissions.  Given these differences and the procedural posture of the *Wheeler* case, Cobalt

7   did not agree that it was appropriate to simply lump a nationwide collective action of Production

8   Partners and MLOAs into the *Wheeler* settlement for MLOs.  Ball Decl., ¶ 3.  The Parties did,

9   however, agree to conduct a pre-complaint mediation over Grewe's and Eberhard's claims on

10   behalf of Production Partners and MLOAs.  Meeks Decl., ¶ 5; Ball Decl., ¶ 4.  The Parties

11   agreed to use Theresa Wakeen as a mediator; since she previously mediated the *Wheeler* action,

12   the Parties believed she would have some familiarity with the issues and the mediation would,

13   therefore, be more efficient.  Ball Decl., ¶ 4.

14   **B.   Cobalt Argued At the *Grewe* Mediation That MLOAs And Production**
          **Partners Earned Less And Worked Fewer Hours Than MLOs in the *Wheeler***
15        **Class**

16       Prior to mediation, Cobalt provided Plaintiffs with compensation and hours data for all

17   Production Partners and MLOAs employed on a nationwide basis during the agreed statute of

18   limitations.  Weiss Decl., ¶ 3 (Dkt. 23).  In the *Wheeler* case, Cobalt deposed Ms. Wheeler and

19   two other MLOs who agreed to opt in to the class.  Ball Decl., ¶ 5.  All three individuals testified

20   that they worked approximately 50 hours per week.  *Id.*  Because of the nature of their work,

21   both MLOAs and Production Partners work fewer hours than MLOs.  Cobalt presented payroll

22   data to Plaintiffs supporting its position that MLOAs and Production Partners regularly recorded

23   and were paid for overtime hours during the relevant time period.  MLOAs and Production

24   Partners were also, generally, compensated less than MLOs because they are not primarily

25   responsible for generating new business.  Cobalt, therefore, took the position at mediation that

26   the overall settlement for MLOAs and Production Partners on a nationwide basis would be less

27   than the *Wheeler* settlement even though both cases had approximately the same number of

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 3
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

putative collective members.  Weiss Decl., ¶ 4.  Based on Cobalt's position, the data it provided,
the information that Plaintiffs had collected regarding MLOAs and Production Partners, and the
prior discovery conducted in the *Wheeler* matter, the Parties, with the assistance of a third-party
mediator, negotiated the present settlement agreement submitted to the Court for approval.
Weiss Decl., ¶ 8.

### C.    The Court Requests Additional Information After Eric Engelland Intervenes

Eric Engelland is a former Cobalt Production Partner who filed a Rule 23 class action
against Cobalt in Washington state court.  Engelland seeks to represent a class of those
Production Partners who were previously employed by Cobalt in Washington State.  He is not
seeking to represent a nationwide class of Production Partners, nor could he because he has not
alleged claims pursuant to the FLSA.  Engelland is joined in his lawsuit by Shari Bell-Beals and
Alan Thain, former MLOs.  None of the three plaintiffs ever held the position of MLOA and
there is not a named class representative in their lawsuit who held the MLOA position.  A class
has not been certified in that action.  As such, Engelland's objections must be limited to the
portion of the *Grewe* settlement related to Production Partners only and not the *Grewe* settlement
of MLOA claims.

Engelland sought to intervene in this action to challenge the settlement because he
believes that he is entitled to more money than he would receive were he to choose to opt-in to
the *Grewe* settlement.  Engelland grossly miscalculates his damages, which actually range
between $42,000 to $50,000 assuming ten hours of off-the-clock work per week.  Nickerson
Decl. ¶ 16 (Dkt. 24).  His damages are not representative of other putative collective members'
potential recoveries because Engelland's potential damages are in the 98th percentile and at least
three standard deviations away from the average.  *Id.* ¶ 17.  Many Production Partners that
Plaintiffs' counsel spoke with did not work any overtime at all.  Meeks Decl. Opposing
Intervention, ¶ 9 (Dkt. 21-1).  Engelland further speculates, without any evidence, that the
settlement was the result of collusion between Plaintiffs and Cobalt.  Engelland's counsel
subsequently informed the Parties that he only objects to the settlement to the extent it applies to

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 4
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

former Production Partners based in Washington State; he is not challenging the settlement as it might apply to the claims of Production Partners located outside of Washington State or MLOAs nationally. Meeks Decl., ¶ 6. Furthermore, as set forth in Cobalt's Opposition to Eric Engelland's Motion to Intervene and Response to Objections to Settlement, the settlement of the claims in the *Grewe* case in no way forecloses Engelland's rights to pursue his claims in Washington state court in the *Bell-Beals* action. *See* Dkt. 22. The only way that Engelland's ability to seek compensation for the overtime and other claims set forth in the *Bell-Beals* complaint is if he affirmatively elects to join the *Grewe* settlement by filling out a claim form and sending it to the claims administrator overseeing the settlement. If he does not join the *Grewe* settlement, no waiver or release of his claims will have occurred, and he will be free to pursue those claims in the action pending in Washington state court.

On June 14, 2016, the Court granted Engelland's motion to intervene and denied the Parties' Motion to Approve the Settlement without prejudice. The Court asked the Parties to jointly submit additional briefing as to four issues. In accordance with these instructions, the Parties submit this joint brief.

## III.    ADDITIONAL BRIEFING

### A.    The Parties Considered the Liability of Corporate Officers in This Case.

The Court has requested the Parties provide additional briefing to "show cause as to why additional claims were not pursued against potentially liable corporate officers in this case." Order at 8.

Corporate officers who have control over the employer's operations may be held ***jointly and severally*** liable for the employer's failure to pay employees consistent with the FLSA. *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009). Such individual liability is based on the FLSA's definition of employer. *See* 29 U.S.C. § 203(d) (defining "employer"). Plaintiffs, therefore, do not have ***additional unique*** claims against Cobalt's potentially jointly and severally liable corporate officers. Rather, in the unlikely event that Cobalt was not able to satisfy a

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

judgment or became insolvent, Plaintiffs would be able to recover against corporate officers provided they could demonstrate the requisite amount of control under the FLSA.

Here, all Parties were aware that certain corporate officers could be held jointly and severally liable for Cobalt's alleged failure to pay employees consistent with the FLSA. Weiss Decl., ¶ 6 (Dkt. 23); Meeks Decl., ¶ 7. Keith Tibbles, one of the potentially liable individual officers, personally attended and participated in the entire mediation. Tibbles Decl., ¶ 6. Further, the Parties' settlement agreement acknowledges the corporate officers' potential liability by individually naming them as released parties. *See* Settlement Agreement, ¶ 9.1. While all Parties acknowledged that the corporate officers *could* be added as individually-named Defendants to the action, there was no need to do so. Cobalt's bylaws indemnify both Mr. Tibbles and Mr. Gehre against all losses, claims, damages, liabilities and expenses, including those incurred in the *Grewe* case. Ball Decl., ¶ 6, Ex. A. And even though Cobalt is in wind-down mode and no longer generating new loans with a revenue stream, its existing resources were easily sufficient to cover the settlement amount. *See* Section III.C, *infra*.

Therefore, while all Parties were aware that the individual corporate officers potentially could be individually named, naming them would not have impacted the claims asserted in the litigation or the settlement amount.

### B.   Plaintiffs Pursued Liquidated Damages And Properly Waived Them As Part of the Settlement.

The Court has requested the Parties provide additional briefing that "shows cause as to why additional or liquidated damages were not pursued." Order at 8.

Plaintiffs pursued liquidated damages against Cobalt as provided by the FLSA. *See* Complaint, ¶¶ 75, 85 (seeking back wages "plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b)"). The parties expressly discussed liquidated damages during the mediation process, and the settlement includes liquidated damages for the regular rate error. *See* Sullivan Weiss Decl. ¶¶ 5, 7 (Dkt. 23). Regarding unpaid overtime, Cobalt contended it never suffered or permitted Production Partners or MLOAs to work off the clock and, thus, it did not violate the

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT - 6
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

FLSA.  Based on evidence that Cobalt presented at the mediation, Plaintiffs agreed to discount any liquidated damages they might receive as part of the compromise reflected in the settlement.

Courts have discretion to deny an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective "good faith" and had objectively "reasonable grounds" for believing that the acts or omissions giving rise to the failure did not violate the FLSA.  29 U.S.C. § 260; *Perez v. Mountain Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011); *Local 246 Util. Workers Union v. Southern Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) ("Liquidated damages are no longer automatic, however.").

Here, Cobalt submitted evidence that supported such a defense.  Specifically, in mid-2011, Cobalt transitioned Production Partners and Mortgage Loan Officers from exempt to non-exempt status.  Goedde Decl., ¶ 4 (Dkt. 25).  Cobalt did so in direct response to an opinion letter issued by the Department of Labor in 2010 specifically addressing the exempt status of mortgage loan officers and similar positions.  At the time of this transition, Cobalt distributed a memorandum to all Production Partners and MLOs stating that they "will be paid an hourly wage for all hours worked."  Goedde Decl., ¶ 5, Ex. A.  From 2011 to 2013, Cobalt provided payroll and timekeeping training to all new hires who were classified as non-exempt; as part of this training, Cobalt instructed employees to enter their time accurately so that Cobalt could pay them properly for all hours worked, including overtime.  Goedde Decl., ¶ 6; Hargrove Decl., ¶¶ 5-6 (Dkt. 27).  Although Cobalt required that employees get prior approval before working overtime—as do many employers—Cobalt did not prohibit MLOs, Production Partners, or MLOAs from working overtime or refuse to pay overtime when it was worked.  Goedde Decl., ¶ 8; Nickerson Decl., ¶ 13 (Dkt. 24) (approximately 33% of all *Grewe* putative class members recorded some overtime hours).  To the extent that employees did not record their overtime hours, there was evidence that they did so contrary to Cobalt's instructions and without its knowledge.  The availability of this defense was debated by the Parties during mediation and, ultimately, Plaintiffs agreed to discount liquidated damages as part of its settlement.  Weiss Decl., ¶ 7 (Dkt. 23).

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 7
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Based on the availability of this defense, the waiver of liquidated damages as part of a

2   settlement is common and, in fact, the FLSA expressly permits such a waiver.  *See, e.g.*, *Dunn v.*

3   *Teachers Ins. & Annuity Ass'n of Am.*, 2016 U.S. Dist. LEXIS 4338, *24-25 (N.D. Cal. Jan. 13,

4   2016) ("Based on the Court's own research, it does not appear common for a defendant in this

5   district to offer to pay any liquidated damages as part of a proposed FLSA settlement

6   agreement.").  Prior to 1949, the law prohibited the private waiver of FLSA rights to liquidated

7   damages by settlement where there existed a bona fide dispute over FLSA coverage.  *Schulte v.*

8   *Gangi*, 328 U.S. 108, 116 (1946).  As a result, employers were often reluctant to reach voluntary

9   settlements with employees or the Department of Labor over claims of back pay because they

10  could never ensure that they would not later be sued for liquidated damages and attorneys' fees.

11  *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977).  Consequently, in 1949

12  Congress amended the FLSA to allow employees to waive FLSA claims under the supervision of

13  the Secretary of Labor.  *See* 1949 Amendments to the FLSA, Pub. L. No. 393, 81 Stat. 923031

14  (codified at 29 U.S.C. § 216(c) (2004)).  The amendments were designed to encourage

15  employers to agree to voluntary settlements with the Wage and Hour division by permitting the

16  waiver of liquidated damages.  *Sneed*, 545 F.2d at 539. Plaintiffs' agreement to waive liquidated

17  damages is not inconsistent with the law and reflects Plaintiffs' counsel's assessment of the

18  litigation risks.[1]  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("Parties

19  represented by competent counsel are better positioned than courts to produce a settlement that

20  fairly reflects each party's expected outcome in litigation.") (citing *In re Pac. Enters. Sec. Litig.*,

21  47 F.3d 373, 378 (9th Cir. 1995).

22  **C.     Cobalt's Financial Condition Is Sufficient to Cover the Settlement.**

23  The Court has requested the Parties provide additional briefing that "provides evidence

24  regarding Cobalt's financial condition."  Order at 8.  On November 6, 2014, Caliber Home

25  Loans completed its acquisition of substantially all of the assets of Cobalt Mortgage, Inc.  Cobalt

26

27  [1] Nothing in the record that calls into question the experience of counsel or raises doubt about counsel's judgment.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

is in wind-down mode and no longer generating new loans with a revenue stream.  A copy of

Cobalt's profit and loss statements from January through March 2016 is included with this

filing.  See Ball Decl., ¶ 7, Ex. B.  This statement demonstrates that as of March 2016 Cobalt had

total equity in the amount of $5,154,501.21.

> **D.**     **Plaintiffs Asked For a Longer Statute of Limitations Than In *Bell-Beals* and the Parties Negotiated a Compromise.**

The Court has requested the Parties provide additional briefing that "explains the parties'

basis for calculating the recovery period and statute of limitations."  Order at 8.

The date an action is commenced under the Fair Labor Standards Act (FLSA), 29

U.S.C.S. § 201 *et seq.*, depends on whether it was instituted as a collective action.  Non-

collective actions are deemed commenced for purposes of an individual claimant's statute of

limitations when the complaint is filed on behalf of that claimant.  29 U.S.C. § 256.  However, an

FLSA collective action is not commenced for purposes of a named plaintiff's limitations period

until both of these occur: (1) a complaint is filed specifically naming the individual as a plaintiff;

and (2) a written consent to suit is filed with the court by that plaintiff.  29 U.S.C. § 256; see

*Thomas v. Talyst, Inc.*, 2008 U.S. Dist. LEXIS 15112, *1 (W.D. Wash. Feb. 28, 2008).  The

FLSA has a two-year statute of limitations for claims unless the employer's violation was

"willful," in which case the statute of limitations is extended to three years.  29 U.S.C. § 255(a);

*Flores v. City of San Gabriel*, 2016 U.S. App. LEXIS 10018, at *6 (9th Cir. June 2, 2016).

Here, Plaintiffs originally demanded that Defendant toll the statute of limitations and

apply the statute of limitations used in the *Wheeler* action on the grounds that they should have

been included in that collective action.  Complaint, ¶ 12.  Cobalt disagreed and the Parties

debated the appropriate statute of limitations based on whether the job duties and compensation

models for Production Partners and MLOAs supported including them in the *Wheeler* class.

Cobalt also took the position that a two-year statute of limitations should apply to Plaintiffs'

claims because there was evidence that its alleged conduct was not willful.  *See* Section III.A,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*supra.*  Ultimately, the parties agreed on a compromise: a three-year statute would run from March 1, 2016.

The Parties do not dispute that a different statute of limitations applies to Engelland's state court claims.  However, as discussed above, the Parties agreed upon the limitation period in this action as part of a compromise.  Plaintiffs originally wanted a longer statute of limitations than the one Engelland proposed applies to his claims in *Bell-Beals*.  Moreover, the possible differences between recovery in the two actions is addressed by the notices the Parties prepared to be sent to members of the collective action.  Both notices inform Washington-based employees of the lawsuit filed by Engelland, provide contact information for Mr. Engelland's attorney, and specifically state that accepting the settlement in *Grewe* will release any overtime claims they might have in *Bell-Beals*.  Collective members who question the settlement may contact Mr. Engelland's attorney and will likely be informed of the different statute of limitations.  Alternatively, if the Court desires, the notices may be revised to expressly inform employees of the different statutes of limitations, and the Parties are willing to prepare revised notices if the Court so instructs.

**E.    The Court Should Approve the Letter from Mr. Tibbles to Potential Opt-in Plaintiffs.**

Although not specifically requested in the Court's Order, the Parties also briefly address the Court's potential concerns regarding the letter from Mr. Tibbles to potential opt-in plaintiffs.  *See* Order at 7-8.  Cobalt has the right to communicate with putative class members regarding the case so long as its communications do not undermine or contradict the proposed opt-in notice from the Court.  *See, e.g., Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (S.D. Cal. 2002) ("Based on the provisions of § 216(b) …, the Court concludes there is no prohibition against pre-"opt-in" communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's [opt-in] notice."); *Talamantes v. PPG Indus., Inc.*, 2014 WL 4145405, at *3-5 (N.D. Cal. Aug. 21, 2014) (refusing to strike employer's letter to potential opt-in employees explaining its positions regarding FLSA litigation).

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 10
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Here, no part of Mr. Tibbles' letter contradicts the Parties' proposed Court-issued notice.[2] Cobalt prepared the letter in order to respond proactively to certain questions it received from potential opt-in plaintiffs in the *Wheeler* lawsuit.  Following settlement of the *Wheeler* matter, Cobalt received a number of questions about the settlement notices.  Tibbles Decl. ¶ 1. Employees expressed a lot of confusion, especially because plaintiffs in the *Bell-Beals* lawsuit communicated with *Wheeler* class members at the time notice and claim forms were sent to them, encouraging them not to join the *Wheeler* settlement, and implying that they would receive more money by waiting for *Bell-Beals* to be resolved.  *Id.* ¶ 2.  In addition, many former Cobalt employees work for the company that acquired Cobalt, some of whom expressed concern about if and how participating in the *Wheeler* settlement might impact their otherwise good personal and professional relationships with Mr. Tibbles, Mr. Gehre, and even their new employer, Caliber Home Loans.  *Id.* ¶ 4.  Cobalt prepared the notice in order to inform employees of the pending state court lawsuit and to provide them with contact information for plaintiffs' counsel in *Bell-Beals* should they have any questions about potential recovery.  Cobalt also "encouraged" employees to accept the settlement in an effort to assuage concerns about their personal and professional relationships—but ***only*** if they concluded that the settlement was in their best interests.  Dkt. 3-1 at 22 (Mr. Tibbles' letter stating "[o]f course, the decision of whether to accept the settlement is yours alone.").

## F.    The Court Should Approve the Settlement in Full and, at the Very Least, It Should Approve the Settlement as to MLOAs and Non-Washington Production Partners.

Based on the further information provided above, the Parties request that the Court approve the settlement in full as a fair and reasonable compromise of a bona fide dispute.  And even if the Court were to have any concerns regarding the settlement as to Washington Production Partners, it should approve the settlement as to all other positions.  As the Court

---

[2] The Court's Order noted that Mr. Tibble's letter incorrectly stated that the *Bell-Beals* lawsuit was filed after *Grewe*.  Order at 7.  However, before the Court issued its Order, the Parties filed a Praecipe correcting that typographical error.  *See* Dkt. 29.

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 11
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

stated in its order, it approved the very similar *Wheeler* settlement because no party objected to it. *See* Order at 7 (distinguishing the Court's evaluation of this settlement from the *Wheeler* settlement because no party objected to the *Wheeler* settlement and the Court, therefore, approved it). Here, Engelland has objected only to the settlement to the extent it covers Washington Production Partners. *See* Meeks Decl. ¶ 6 (Engelland's counsel indicated to Mr. Meeks that he objects to the settlement only to the extent it covers Washington Production Partners). Because no one has raised any objection regarding the settlement to the extent it covers MLOAs and non-Washington Production Partners, the Court should follow its *Wheeler* decision and approve this settlement at least to that extent.

## IV. CONCLUSION

For the reasons discussed above and as set forth in their moving papers and opposition to Engelland's Motion to Intervene, the Parties renew their position that the prior settlement is a fair and reasonable resolution of the parties' bona fide disputes as to liability and damages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The Parties respectfully request that the Court approve the settlement.

DATED this 29th day of June, 2016.

ROWDY MEEKS LEGAL GROUP LLC
By: *Rowdy B. Meeks*
Rowdy B. Meeks, *Admitted Pro Hac Vice*
Email: Rowdy.Meeks@rmlegalgroup.com
8201 Mission Road, Suite 250
Prairie Village, KS 66208
Telephone: (913) 766-5585
Facsimile: (816) 875-5069


By: /s/ Beth E. Terrell
Beth E. Terrell, WSBA #26759
TERRELL MARSHALL DAUDT & WILLIE PLLC
Email: bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 12
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2       *Attorneys for Plaintiffs*

3       Davis Wright Tremaine LLP
        By: *s/Taylor S. Ball*
4           Sheehan Sullivan Weiss, WSBA #33189
            Taylor S. Ball, WSBA #46972
5           Ryan C. Hess, WSBA #50738
            1201 Third Avenue, Suite 2200
6           Seattle, WA 98101-3045
            Telephone: (206) 622-3150
7           Facsimile: (206) 757-7700
            Email:  sheehansullivanweiss@dwt.com
8           Email:  taylorball@dwt.com
            Email:  ryanhess@dwt.com
9

10      *Attorneys for Defendant Cobalt Mortgage, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 13
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on June 29, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 29th day of June, 2016.

Davis Wright Tremaine LLP
Attorneys for Defendant Cobalt Mortgage, Inc.

By  s/ *Margaret C. Sinnott*
      Margaret C. Sinnott
      1201 Third Avenue, Suite 2200
      Seattle, Washington 98101-3045
      Telephone: (206) 622-3150
      Facsimile: (206) 757-7700
      Email: margaretsinnott@dwt.com

JOINT SUBMISSION IN SUPPORT OF SECOND MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT - 14
[2:16-cv-00577]
DWT 29906873v6 0083991-000033

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700