THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCENE GREWE and LORI EBERHARD, on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COBALT MORTGAGE, INC.,<br><br>Defendant. | CASE NO. C16-0577-JCC<br><br>ORDER GRANTING SECOND MOTION FOR SETTLEMENT APPROVAL |

This matter comes before the Court on the second motion for settlement approval[1] by Plaintiffs Francene Grewe and Lori Eberhard and Defendant Cobalt Mortgage, Inc. ("Settlement Parties") (Dkt. No. 36) and the response by Intervenor Eric Engelland (Dkt. No. 40). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and APPROVES the settlement for the reasons explained herein.

I.  **BACKGROUND**

The factual background of this case was summarized in a previous order. (Dkt. No. 31 at 2.) In that order, the Court considered the Settlement Parties' motion for settlement approval and

---

[1] Although the Settlement Parties submitted their pleading as supplemental briefing, the Court treats the briefing as a second motion for approval of the collective action settlement. (*See* Dkt. No. 31 at 8.)

ORDER GRANTING SECOND MOTION FOR
SETTLEMENT APPROVAL
PAGE - 1

Engelland's objections thereto. (*Id.* at 5-8.) The Court found that it needed more information to determine whether the settlement was fair and reasonable. (*Id.* at 6.) The Court directed the Settlement Parties to: (1) produce evidence of Cobalt's financial condition; (2) show why additional claims were not pursued against potentially liable corporate officers in this case; (3) explain the parties' basis for calculating the recovery period and statute of limitations; and (4) show why additional or liquidated damages were not pursued. (*Id.* at 8.)

## II. DISCUSSION

### A. Standard of Review

In reviewing a proposed collective action settlement under the Fair Labor Standards Act (FLSA), "a district court must determine whether the settlement represents a 'fair and reasonable resolution of a bona fide dispute.'" *Selk v. Pioneers Memorial Healthcare Dist.*, __ F. Supp. 3d __, 2016 WL 519088 at *3 (S.D. Cal. Jan. 29, 2016) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 at *2 (N.D. Cal. Dec. 19, 2012) (quoting *Lynn's*, 679 F.2d at 1354). The Court considers factors such as the risk, expense, complexity, and likely duration of litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the reaction of putative members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988).

### B. Analysis

The Court first addresses the supplemental briefing on the issues requested.

*Cobalt's Financial Status*: In November 2014, Cobalt was substantially acquired by Caliber Home Loans. (Dkt. No. 36 at 8; Dkt. No. 38 at 2.) Cobalt is now "in wind-down mode and no longer generating new loans with a revenue stream." (Dkt. No. 36 at 8-9.) Cobalt submitted a balance sheet showing that, as of March 2016, its total equity was $5,154,501.21.

ORDER GRANTING SECOND MOTION FOR
SETTLEMENT APPROVAL
PAGE - 2

(Dkt. No. 37-2 at 3.) This is more than sufficient to cover the settlement amount.

*Liability of Corporate Officers*: Corporate officers who have supervisory power over the employer's operations may be held jointly and severally liable for the employer's failure to pay employees consistent with the FLSA. *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009). The Settlement Parties acknowledge that certain corporate officers could be held liable for Cobalt's alleged failure to sufficiently compensate employees, but that those officers have not been named as defendants in the settlement. (Dkt. No. 36 at 6.) The Settlement Parties agreed to release any claims against these officers because Cobalt's bylaws indemnify them and because Cobalt's finances are sufficient to cover the settlement amount. (*Id.*)

Engelland argues that Plaintiffs would have been in a stronger bargaining position if they had named the officers as individual defendants. (Dkt. No. 40 at 6.) Ultimately, though, the Court is unconvinced that the failure to join these officers renders the agreement unfair or unreasonable. Cobalt has more than enough funds to cover the proposed settlement amount.

*Recovery Period/Statute of Limitations*: The FLSA has a two-year statute of limitations unless the employer's violation was "willful," in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a); *Flores v. City of San Gabriel*, __ F.3d __, 2016 WL 3090782 at *11 (9th Cir. June 2, 2016). Plaintiffs initially demanded that Cobalt toll the statute of limitations, arguing that they should have been included in the *Wheeler* action. (Dkt. No. 36 at 9; Dkt. No. 1 at 3.) Cobalt disputed this, noting the differing job duties and compensation models for the positions at issue. (Dkt. No. 36 at 9.) Cobalt also maintained that a two-year statute of limitations should apply, because there was evidence it did not act willfully. (*Id.*) In the end, the parties reached a compromise of a three-year statute of limitations running from March 1, 2016. (*Id.* at 10.) This recovery period covers claims for hours worked between March 1, 2013 and November 4, 2014, when Cobalt ceased operations. (*See* Dkt. No. 3-1 at 22.)

Engelland argues that the proposed settlement waives a year of the statute of limitations for Washington Production Partners, given that the statute of limitations period in the *Bell-Beals*

ORDER GRANTING SECOND MOTION FOR
SETTLEMENT APPROVAL
PAGE - 3

suit was tolled and stretches back to March 17, 2012. (Dkt. No. 40 at 8.) But, this alone is not a reason to discount the *Grewe* agreement, especially because Washington Production Partners can choose to participate in the *Bell-Beals* suit instead.[2] Moreover, the *Grewe* agreement has clear indications of compromise. For example, the end date of the recovery period is nearly two months prior to this suit's commencement, making those additional months available for claimed overtime. (*See* Dkt. No. 1.) And, Cobalt agreed to a three-year period, the longer of the two available under the FLSA. This limitations period is not unreasonable or unfair.

*Liquidated Damages*: 29 U.S.C. § 216(b) provides that an employer who violates the FLSA shall be liable for unpaid overtime compensation, plus an additional equal amount as liquidated damages. Liquidated damages are not automatic, though. *Local 246 Util. Workers Union v. Southern Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). If an employer shows that the failure to pay appropriate wages was in good faith and that the employer had reasonable grounds for believing the failure was not an FLSA violation, the Court has discretion to deny an award of liquidated damages. 29 U.S.C. § 260; *see also Local 246*, 83 F.3d at 29.

Here, Plaintiffs waived liquidated damages as to their claims for overtime hours that were not recorded. (Dkt. No. 43 at 5.) The Settlement Parties maintain that this is fair and reasonable based on Cobalt's defense that failing to record such time violated company policy. (*See* Dkt. No. 43 at 5-6; Dkt. No. 25 at 2, 6-7; Dkt. No. 27 at 2).

Engelland argues that, under *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1946), employees may not waive liquidated damages in the interest of achieving a settlement. (Dkt. No. 40 at 2.) However, an employee "may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a

---

[2] The Court acknowledges Engelland's concerns that the proposed notice letter does not make this distinction clear; this issue will be addressed below.

judgment approving the settlement."[3] *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 at *2 (N.D. Cal. Dec. 19, 2012) (citing *Lynn's*, 679 F.2d at 1354-55). Thus, the question is whether the settlement, including the waiver, "reflects a reasonable compromise over issues that are actually in dispute." *McKeen-Chaplin*, 2012 WL 6629608 at *2.

*Fairness and Reasonableness of Settlement*: Accordingly, the Court now turns to the question of whether the proposed settlement is fair and reasonable. There are certain considerations the Court keeps in mind when addressing this question.

First, the Ninth Circuit rejects the argument that a court must "specifically weigh[] the merits of the class's claim against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Rather, the court should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965; *see also In re Immune*

---

[3] Although the *Lynn's* test has not been formally adopted by the Ninth Circuit, many district courts in this circuit have applied it. *See, e.g.*, *Gonzalez-Rodriguez v. Mariana's Enterps.,* 2016 WL 3869870 at *2 (D. Nev. July 14, 2016); *Gamble v. Boyd Gaming Corp.*, 2015 WL 4874276 at *4 (D. Nev. Aug. 13, 2015); *Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 163330 at *6 (N.D. Cal. Nov. 14, 2013); *Trinh v. JPMorgan Chase & Co.,* 2009 WL 532556 at *1 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009); *Thornton v. Solutionone Cleaning Concepts. Inc.*, 2007 WL 210586 at *3 (E.D. Cal. Jan. 26, 2007).

*Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (where the parties participated in voluntary mediation before an experienced mediator and "reached an agreement-in-principle to settle the claims in the litigation," such negotiations are "highly indicative of fairness"). "Ultimately, [when evaluating a proposed settlement,] the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).

In addition, where the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement. *Davis v. J.P. Morgan Chase & Co.*, 775. F. Supp. 2d 601, 604-05 (W.D.N.Y. 2011). This is because Rule 23 settlements bind all class members except those who affirmatively opt out, thus presenting the risk that a settlement will unknowingly bind individuals. *Id.* In contrast, an FLSA settlement binds only those who affirmatively opt in. *Id.*

With these principles in mind, the Court finds that the amount of $650,000 reflects a fair and reasonable amount for the 427 putative class members. Engelland objects that the settlement is unconscionably low, alleging that it provides only a tiny percentage of the potential amount owed. (Dkt. No. 15 at 6.) This calculation is based on Engelland's estimate of his own overtime worked and average hourly wage. (*Id.*) In response, however, Cobalt produced evidence that, for most employees, the potential amount owed is much closer to the settlement amount. (*See* Dkt. No. 22 at 10-11; Dkt. No. 6-2 at 2-3; Dkt. No. 24 at 2-4.) Cobalt based this estimate on Plaintiffs' counsel's interviews of several dozen putative members and Cobalt's expert's analysis of relevant payroll records. (*Id.*) This evidence allays the concern that the *Grewe* collective action members would be wildly undercompensated. While Engelland may not feel that the settlement amount adequately compensates him, he is not bound by the amount and he has not shown that it is appropriate for the Court to "intru[de] upon what is otherwise a private consensual agreement." *Officers of Justice*, 688 F.2d at 625. "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution." *Id.* Here, the parties

voluntarily came to a fair and reasonable agreement,[4] one that Engelland is free to reject.

*Notice Letter*: Finally, the Court addresses the issue of the proposed notice letter. The Court expressed concern that the letter was misleading,[5] and the Settlement Parties agreed to accept revisions. (Dkt. No. 31 at 7-8; Dkt. No. 43 at 9.) The Court makes three amendments to the letter. First, the letter must clearly explain the options available to putative members, including: the differences between the *Grewe* settlement and the *Bell-Beals* suit, such as the difference in recovery periods; the estimated recovery amount per member in the *Grewe* suit; and the putative members' right to opt into this suit, the *Bell-Beals* suit (if applicable), or neither. Second, while the letter may explain the benefits of opting in (*e.g.*, avoiding the uncertainty of litigation), it shall contain no language encouraging any putative member to do so. Finally, the letter may not misrepresent Cobalt's position on its acceptance of liability. For example, Cobalt may state that it denies any *intentional* violations of the FLSA, or it may remain silent on the question of liability. However, Cobalt may not state that it "vigorously denies" all allegations in the *Grewe* claim. (*See* Dkt. No. 41 at 4-9.)

### III. CONCLUSION

For the foregoing reasons, the second motion for settlement approval (Dkt. No. 36) is GRANTED. The settlement, including the attorney fee request, is hereby APPROVED.

//
//
//
//
//

---

[4] Not only have Plaintiffs in this case deemed this settlement agreement acceptable, but more than 200 members accepted a similar agreement in *Wheeler*. (*See* Dkt. No. 23 at 3-4.)

[5] The Court notes the praecipe at Docket Number 29 and understands that the final notice letter will include the corrected language.

ORDER GRANTING SECOND MOTION FOR
SETTLEMENT APPROVAL
PAGE - 7

DATED this 27th day of July 2016.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE