THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCENE GREWE and LORI EBELHARD, on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COBALT MORTGAGE, INC.,<br><br>Defendant. | CASE NO. C16-0577-JCC<br><br>ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Defendant Cobalt's Motion for a temporary restraining order ("TRO") or, alternatively, a protective order (Dkt. No. 49). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

On April 21, 2016, the above-captioned matter was filed in this Court after the parties participated in mediation. (Dkt. No. 1.) The same day, April 21, the parties sought certification of this FLSA collective action and approval of the settlement achieved at mediation. (Dkt. No. 3.) On May 2, 2016, Eric Engelland moved to intervene and objected to the proposed settlement. (Dkt. No. 14.) The Court granted the motion to intervene, considered Mr. Engelland's objections, and ordered the parties to submit additional briefing before it would approve the settlement.

(Dkt. No. 31.) Upon receipt of that additional briefing, the Court ultimately approved the settlement. (Dkt. No. 48.) In its most recent order, the Court made clear that it had concerns about the parties' communications with putative class members via a notice letter. (*Id.* at 7.) As has been discussed in the Court's previous two orders, the complications of this case stem from its overlap with a pending collective FLSA action against Defendant Cobalt in King County Superior Court, *Bell-Beals*, in which Intervenor Engelland is a named plaintiff. (*See* Dkt. No. 31 at 2.)

After approving the collective action settlement and adopting a notice process, the Court has been informed—through the filing of Cobalt's present motion—that Engelland's counsel Jeff James sent a letter to putative members of the settlement class who may also be potential class members in the *Bell-Beals* suit. (Dkt. No. 49.) The letter, which functions essentially to dissuade potential collective action members from opting into the settlement in the above-captioned matter, preempts the notice process approved by the Court. (Dkt. No. 50 at 5–8.) It suggests that Mr. James represents the person receiving the letter despite the fact that no class has been certified in the *Bell-Beals* suit. (Dkt. No. 50 at 5; Dkt. No. 51 at 6.) ("Our law firm represents persons such as yourself . . .") The letter mischaracterizes the Court's orders and omits any mention of the Court's ultimate determination that the settlement is fair and reasonable. (Dkt. No. 50 at 6) (describing the Court's orders as "not mak[ing] any specific finding that the proposed settlement was a 'good deal.'") Mr. James disingenuously pulls a quote from the Court's first order, writing that, "the United States District Court Judge described Cobalt's compensation methods as 'a scheme,'" despite the fact that the Court's order only wrote that "the Department of Labor refers to policies . . . like that *allegedly* employed in this case . . as schemes." (Dkt. No. 50 at 6; Dkt. No. 31 at 6) (emphasis added). The Court did not make any ruling on the merits determining that Cobalt's pay practices constituted a "scheme." In a similar manner, the letter grafts a portion of the Court's order acknowledging Engelland's arguments and presents it as holding: "[a]s the Court noted in the accompanying Order, Cobalt seems to

ORDER GRANTING MOTION FOR A
TEMPORARY RESTRAINING ORDER
PAGE - 2

have established a scheme whereby it *discouraged* employees from reporting the actual number of hours worked." (Dkt. No. 50 at 7) (emphasis in original). The Court's Order actually simply noted that, in considering whether permissive intervention was warranted, that Engelland sought "similar redress under *the theory that* Cobalt . . . discouraged its employees from recording all hours worked." (Dkt. No. 31 at 5) (emphasis added). Ultimately, the letter urges its recipients not to opt into this collective action, writing, "we strongly recommend that you not sign anything until you have all the facts," after suggesting that contacting James or his law firm is the proper channel to "receive further information." (Dkt. No. 50 at 8.)

Due to the interfering nature of James's letter, Cobalt moves the Court to issue a Temporary Restraining Order prohibiting James or his law firm from engaging in similar communication, to set a hearing on a motion for a preliminary injunction to the same effect, or in the alternative to institute a protective order barring further contact until Court-approved notice has taken place. (Dkt. No. 49.)

Engelland has filed a notice pursuant to Local Civ. R. 65(b)(5) that he intends to oppose the motion for a TRO. (Dkt. No. 52.) Local Civ. R. 65(b)(5) provides that "If the movant meets the requirements of Fed. R. Civ. P. 65(b), the court may grant the motion without awaiting a response." As outlined in further detail below, the Court finds the requirements of Fed. R. Civ. P. 65(b) satisfied here, and the Court grants a TRO without delay.

## II.   DISCUSSION

### A.   Standard of Review

Under Fed. R. Civ. P. 65, a party seeking a TRO must show (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in his favor, and (4) that an injunction in is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating the standard for a preliminary injunction); *see also L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981). Like a preliminary injunction, issuance of a TRO is "an extraordinary

remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 55 U.S. at 24); *see also Frontline Medical Associates, Inc. v. Coventry Healthcare Workers Compensation, Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) (same test applied to TROs as to preliminary injunctions).

Cobalt seeks a TRO prohibiting Engelland, James, and the law firm of Sebris Busto James from further communicating with the putative class until September 12, 2016, one week after Court-approved notice materials are sent. (Dkt. No. 49 at 2.) Cobalt also asks the Court to set a hearing date on a motion for a preliminary injunction to the same effect. (*Id.*)

### 1. Likelihood of Success on the Merits

A showing of likelihood of success on the merits to a certain degree is not required; rather, this factor is considered along with the overall analysis of a balance of hardship. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 525 F.2d 86, 88 (9th Cir.1975). Where the potential harm to Plaintiff is "sufficiently serious," it is "only necessary that there be a fair chance of success on the merits." *Id.*

The Court is endowed with "both the duty and the broad authority to . . . enter appropriate orders governing the conduct of [class] counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Where, as here, a collective action has been approved, "the Court has an interest that no . . . communication undermine or contradict the Court's own notice." *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002). While the Central District of California's decision in *Parks* is merely persuasive, the Court adopts its reasoning: that a 29 U.S.C. § 216 FLSA collective action is analogous to a Rule 23 class pre-certification in that potential class members are not technically "represented" at this stage of the proceeding due to the opt-in nature of the collective action. *Id.* Accordingly, while the Rules of Professional Conduct do not bar communications with putative class members by an opposing party, a court may choose to restrict such pre-certification communications if presented with "a clear record and specific findings that reflect . . . the need for a limitation and the potential interference with

the rights of the parties." *Id.* at 1084 (quoting *Gulf Oil*, 452 U.S. at 101). For the purposes of this inquiry, the Court determines that restriction on communications between opposing counsel and putative class members should be based on whether the communication at issue is "misleading or improper." *Id.* (citing *Impervious Paint Industries v. Ashland Oil*, 508 F. Supp. 720, 723 (W. D. Ky. 1981); *Pollar v. Judson Steel Corp.*, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984)).

While the Court in *Parks* did not find a basis to restrict communications from the defendant to putative FLSA collective action members, in this instance the Court finds the letter from James sufficiently misleading and, importantly, capable of undermining the Court's notice process. There is a clear record—contained in the letter itself—of James's and Engelland's willingness to mischaracterize the facts and interfere with the notice process approved in this case. Accordingly, the Court is satisfied that Cobalt has demonstrated a high likelihood of success on the merits with respect to the issue of whether communication from James, Engelland, or James's law firm will interfere with the rights of the parties. This factor weighs in favor of granting a TRO.

### 2. Likelihood of Irreparable Harm

As Cobalt's motion attests, neither the Court nor the parties can "go back in time and prevent those misrepresentations from occurring." (Dkt. No. 49 at 10.) In other words, to a large extent, irreparable harm has already occurred. The Court notes that James's letter solicits additional unilateral contact between his law firm and the putative class members. (Dkt. No. 50 at 8) (implying that contacting his firm is the way to "have all the facts.") This is particularly concerning and demonstrates that additional harm may occur in the absence of a restriction on communication. The Court concludes that this factor weighs in favor of granting a TRO.

### 3. Balance of Hardship and the Public Interest

Next, the Court assesses whether the balance of equities tips in Cobalt's favor and the injunction is in the public interest. *Winter*, 555 U.S. at 20. These factors may be considered together. *A.H.R. v. Wash. State Health Care Auth.*, 2016 WL 98513, at *17 (W.D. Wash. Jan. 7,

2016). The "balance of hardship tips sharply in . . . favor" of Cobalt here. *Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. California Carpenters Reg'l Council*, 992 F. Supp. 1138, 1147 (N.D. Cal. 1997) *aff'd sub nom. Local 34 Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders v. N. California Carpenters Reg'l Council*, 139 F.3d 905 (9th Cir. 1998). Simply put, James sent a letter to advance the interests of the *Bell-Beals* lawsuit and in so doing imposed significant hardship on the fair administration of this case. The hardship imposed on James by restricting similar communication is outweighed by the confusion and difficult caused by his communications.

Finally, Cobalt does not point to a strong public interest argument in favor of granting a TRO, and the Court does not find evidence of one particularly considering the fact that the putative class members contacted are not technically represented by counsel until they opt-in. However, the Court notes that James's tactics demonstrate poor judgment and, at best, a willingness to stretch the truth of the Court's orders.

In conclusion, the Court finds that the requirements of Fed. R. Civ. P. 65(b) are satisfied such that the issuance of a temporary restraining order is appropriate. Accordingly, Engelland and his counsel are hereby prohibited from further contact with the putative class that discusses the *Grewe* settlement until September 12, 2016. Engelland and his counsel are not otherwise restricted in their communication with putative collective action members.

Additionally, Engelland is hereby ORDERED to show cause as to why a preliminary injunction should not issue, and the Court notes Cobalt's ongoing motion for a preliminary injunction for Friday, August 26, 2016. Engelland is to file a response brief on or before August 22, 2016. Cobalt and Plaintiffs may file an optional reply in support of a preliminary injunction on or before August 26, 2016. The Clerk is directed to redesignate the present motion (Dkt. No. 49) as a motion for a preliminary injunction with a noting date of August 26, 2016.

### III.  CONCLUSION

For the foregoing reasons, Defendant Cobalt's motion for a temporary restraining order

1 | (Dkt. No. 49) is GRANTED.

2 | DATED this 10th day of August 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR A
TEMPORARY RESTRAINING ORDER
PAGE - 7