THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCENE GREWE and LORI EBELHARD, on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COBALT MORTGAGE, INC.,<br><br>Defendant. | CASE NO. C16-577-JCC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION AND CORRECTIVE COMMUNICATION |

This matter comes before the Court on Defendant Cobalt's motion for a preliminary injunction (Dkt. No. 49) and motion for a corrective communication (Dkt. No. 54). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS both motions for the reasons explained herein.

## I.  BACKGROUND

On April 21, 2016, the above-captioned matter was filed in this Court after the parties participated in mediation. (Dkt. No. 1.) The same day, April 21, the parties sought certification of this Fair Labor Standards Act (FLSA) collective action and approval of the settlement achieved at mediation. (Dkt. No. 3.) On May 2, 2016, Eric Engelland moved to intervene and objected to the proposed settlement. (Dkt. No. 14.) The Court granted the motion to intervene, considered Mr. Engelland's objections, and ordered the parties to submit additional briefing

before it would approve the settlement. (Dkt. No. 31.) Upon receipt of that additional briefing, the Court ultimately approved the settlement. (Dkt. No. 48.) In the order approving settlement, the Court made clear that it had concerns about the parties' communications with putative class members via a notice letter. (*Id.* at 7.) As has been discussed in the Court's previous three orders, the complications of this case stem from its overlap with a pending collective FLSA action against Defendant Cobalt in King County Superior Court, *Bell-Beals*, in which Intervenor Engelland is a named plaintiff. (*See* Dkt. No. 31 at 2.)

After approving the collective action settlement and adopting a notice process, the Court has been informed—through the filing of Cobalt's present motion—that Engelland's counsel Jeff James sent a letter to putative members of the settlement class who may also be potential class members in the *Bell-Beals* suit. (Dkt. No. 49.) The letter, which functions essentially to dissuade potential collective action members from opting into the settlement in the above-captioned matter, preempts the notice process approved by the Court. (Dkt. No. 50 at 5–8.) It suggests that Mr. James represents the person receiving the letter despite the fact that no class has been certified in the *Bell-Beals* suit. (Dkt. No. 50 at 5; Dkt. No. 51 at 6) ("Our law firm represents persons such as yourself . . ."). The letter mischaracterizes the Court's orders and omits any mention of the Court's ultimate determination that the settlement is fair and reasonable. (Dkt. No. 50 at 6) (describing the Court's orders as "not mak[ing] any specific finding that the proposed settlement was a 'good deal.'") Mr. James disingenuously pulls a quote from the Court's first order, writing that, "the United States District Court Judge described Cobalt's compensation methods as 'a scheme,'" despite the fact that the Court's order only wrote that "the Department of Labor refers to policies . . . like that *allegedly* employed in this case . . as schemes." (Dkt. No. 50 at 6; Dkt. No. 31 at 6) (emphasis added). The Court did not make any ruling on the merits determining that Cobalt's pay practices constituted a "scheme." In a similar manner, the letter grafts a portion of the Court's order acknowledging Engelland's arguments and presents it as holding: "As the Court noted in the accompanying Order, Cobalt seems to have

ORDER GRANTING DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND
CORRECTIVE COMMUNICATION
PAGE - 2

established a scheme whereby it *discouraged* employees from reporting the actual number of hours worked." (Dkt. No. 50 at 7) (emphasis in original). The Court's order actually simply noted that, in considering whether permissive intervention was warranted, Engelland sought "similar redress under *the theory that* Cobalt . . . discouraged its employees from recording all hours worked." (Dkt. No. 31 at 5) (emphasis added). Ultimately, the letter urges its recipients not to opt into this collective action, writing, "we strongly recommend that you not sign anything until you have all the facts," after suggesting that contacting James or his law firm is the proper channel to "receive further information." (Dkt. No. 50 at 8.)

Due to the interfering nature of James's letter, Cobalt moved the Court to issue a temporary restraining order prohibiting James or his law firm from engaging in similar communication, to set a hearing on a motion for a preliminary injunction to the same effect, or in the alternative to institute a protective order barring further contact until Court-approved notice has taken place. (Dkt. No. 49.) On August 10, 2016, the Court granted Cobalt's motion for a temporary restraining order. (Dkt. No. 53.) The Court ordered that Engelland and his counsel were prohibited from further contact with the putative class discussing the *Grewe* settlement until September 12, 2016. (*Id.* at 6.) Engelland was also ordered to show cause as to why a preliminary injunction should not issue. (*Id.*)

Cobalt seeks a preliminary injunction prohibiting Engelland, James, and the law firm of Sebris Busto James, from further communicating with the putative class until September 12, 2016, one week after Court-approved notice materials are sent. (Dkt. No. 49 at 2.) On August 11, 2016, Cobalt also moved the Court to issue a corrective communication to those contacted by Engelland. (Dkt. No. 54.) As outlined below, the Court finds the requirements of Fed. R. Civ. P. 65(a) satisfied here, and the Court grants a preliminary injunction. Additionally, the Court grants Cobalt's motion to issue a corrective communication with the two alterations outlined below.

///

///

ORDER GRANTING DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND
CORRECTIVE COMMUNICATION
PAGE - 3

## II. DISCUSSION

### A. Preliminary Injunction Standard of Review

Under Fed. R. Civ. P. 65(a), a party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in his favor, and (4) that an injunction in is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *See also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). Issuance of a preliminary injunction is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 24).

#### 1. Likelihood of Success on the Merits

A showing of likelihood of success on the merits to a certain degree is not required; rather, this factor is considered along with the overall analysis of a balance of hardship. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975). Where the potential harm to Plaintiff is "sufficiently serious," it is "only necessary that there be a fair chance of success on the merits." *Id.*

The Court is endowed with "both the duty and the broad authority to . . . enter appropriate orders governing the conduct of [class] counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Where, as here, a collective action has been approved, "the Court has an interest that no . . . communication undermine or contradict the Court's own notice." *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002). While the Rules of Professional Conduct do not bar communications with putative class members by an opposing party, a court may choose to restrict such pre-certification communications if presented with "a clear record and specific findings that reflect . . . the need for a limitation and the potential interference with the rights of the parties." *Id.* at 1084 (quoting *Gulf Oil*, 452 U.S. at 101). For the purposes of this inquiry, the Court determines that restriction on communications between opposing counsel and putative class members should be based on whether the communication at issue is "misleading or

improper." *Id.* (citing *Impervious Paint Industries v. Ashland Oil*, 508 F. Supp. 720, 723 (W. D. Ky. 1981); *Pollar v. Judson Steel Corp.*, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984)).

Engelland argues that prospective class counsel was not prohibited from communicating with prospective class members. However, this does not mean that prospective class counsel can communicate with the putative class in a misleading or improper way. Engelland argues that some of the communications the Court found to be misleading are not harmful because they are arguably true. (Dkt. No. 55 at 11-15.) Nevertheless, "[w]hether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall impression or message left by the communication." *Talavera v. Leprino Foods Co*, 2016 WL 880550, at *5 (E.D. Cal. Mar. 8, 2016). The Court is not persuaded by Engelland's arguments and finds the letter from James sufficiently misleading and, importantly, capable of undermining the Court's notice process. There is a clear record—contained in the letter itself—of James's and Engelland's willingness to mischaracterize the facts and interfere with the notice process approved in this case.

Engelland also argues that prospective class counsel has apologized to the Court and given his word that misleading communications will not happen again. (Dkt. No. 55 at 11.) However, a party cannot "defeat an order of injunctive relief through promises of voluntary cessation." *AAMCO Transmissions, Inc. v. Dunlap*, 2015 WL 4476423, at *3 (E.D. Pa. July 22, 2015). Therefore, this argument also fails to persuade the Court.

Accordingly, the Court is satisfied that Cobalt has demonstrated a high likelihood of success on the merits with respect to the issue of whether communication from James, Engelland, or James's law firm will interfere with the rights of the parties. This factor weighs in favor of granting a preliminary injunction.

### 2. Likelihood of Irreparable Harm

Engelland argues that putative class members, not Cobalt, will suffer irreparable harm if the Court grants a preliminary injunction because they will not understand how the *Grewe*

1  settlement affects their rights. (Dkt. No. 55 at 16.) However, the Court has ordered that the
2  parties make three alterations to the proposed notice letter, including clearly explaining the
3  differences between the *Grewe* settlement and the *Bell-Beals* suit, such as the difference in
4  recovery periods; the estimated recovery amount per member in the *Grewe* suit; and the putative
5  members' right to opt into this suit, the *Bell-Beals* suit (if applicable), or neither. (Dkt. No. 48 at
6  7.) As such, this argument is not persuasive.
7        Engelland also argues that Cobalt saves money if putative members opt out and therefore
8  there is no irreparable harm. (Dkt. No. 55 at 17.) However, Cobalt suffers irreparable harm in
9  that James's letter contained numerous misrepresentations outlined above and could lead to
10 confusion and misunderstanding by putative members. As Cobalt's motion attests, neither the
11 Court nor the parties can "go back in time and prevent those misrepresentations from occurring."
12 (Dkt. No. 49 at 10.) In other words, to a large extent, irreparable harm has already occurred. The
13 Court notes that James's letter solicits additional unilateral contact between his law firm and the
14 putative class members. (Dkt. No. 50 at 8) (implying that contacting his firm is the way to "have
15 all the facts.") This is particularly concerning and demonstrates that additional harm may occur
16 in the absence of a restriction on communication. The Court concludes that this factor weighs in
17 favor of granting a preliminary injunction.

                **3.  Balance of Hardship and Public Interest**

19       Next, the Court assesses whether the balance of equities tips in Cobalt's favor and the
20 injunction is in the public interest. *Winter*, 555 U.S. at 20. These factors may be considered
21 together. *A.H.R. v. Wash. State Health Care Auth.*, 2016 WL 98513, at *17 (W.D. Wash. Jan. 7,
22 2016). Engelland argues that the balance tips in his favor because there is no potential damage to
23 Cobalt. (Dkt. No. 55 at 18.) However, as addressed above, Engelland's argument misses the
24 point. Irreparable harm was suffered by way of a misleading communication.
25       The "balance of hardship tips sharply in . . . favor" of Cobalt here. *See Pile Drivers,*
26 *Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. California Carpenters*

ORDER GRANTING DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND
CORRECTIVE COMMUNICATION
PAGE - 6

*Reg'l Council*, 992 F. Supp. 1138, 1147 (N.D. Cal. 1997) *aff'd sub nom. Local 34 Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders v. N. California Carpenters Reg'l Council*, 139 F.3d 905 (9th Cir. 1998). Simply put, James sent a letter to advance the interests of the *Bell-Beals* lawsuit and in so doing imposed significant hardship on the fair administration of this case. The hardship imposed on James by restricting similar communication is outweighed by the confusion and difficulty caused by his communications.

Finally, Cobalt argues that a district court's ability to safeguard the administering of justice by regulating communication in a class is an important public interest. (Dkt. No. 57 at 14.) Engelland argues that there is a strong public interest in the enforcement of the FLSA, asserting that a preliminary injunction will deny putative class members "access to an important source of information regarding their claims." (Dkt. No. 55 at 18-19). Engelland's argument again disregards the Court's instructions that the parties must amend the proposed notice letter. (*See* Dkt. No. 48 at 7.) The Court agrees with Cobalt that there is a public interest in enforcing a fair and reasonable Court-approved settlement by regulating misleading communications. The Court concludes that this factor weighs in favor of granting a preliminary injunction.

In conclusion, the Court finds that the requirements of Fed. R. Civ. P. 65(a) are satisfied such that the issuance of a preliminary injunction is appropriate. Accordingly, Engelland and his counsel are hereby prohibited from further contact with the putative class discussing the *Grewe* settlement, including communications that discourage settlement participation, until September 12, 2016. Engelland and his counsel are not otherwise restricted in their communication with putative collective action members.

B. **Corrective Communication**

Under Fed. R. Civ. P. 23(d)(1)(B)(i), "the [C]ourt may issue orders that require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of any step in the action." *See Gulf Oil*, 452 at 99–100 (noting a district court's duty and broad authority to "enter appropriate orders governing the conduct of counsel and

1  parties"). "This discretion includes requiring the issuance of corrective notices and action to
2  ameliorate confusing or misleading communications." *O'Connor v. Uber Techs. Inc.*, 2013 WL
3  6407583, at *7 (N.D. Cal. Dec. 6, 2013) (citing *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667
4  (E.D. Tex. 2003). District courts have issued corrective notices in similar situations to the case at
5  issue. For example, a district court relied on *Gulf Oil* to enter "appropriate orders," such as
6  requiring defendant to issue corrective notice to inform potential class members of their right to
7  join a putative class action, where defendant sent letter discouraging participation in pending
8  class action. *Belt*, 299 F. Supp. 2d at 667.

9      Cobalt requests that the Court order the settlement administrator to include a cover letter
10 consistent with the form attached as Exhibit A to the motion (Dkt. No. 54 at 8) with the Court-
11 approved settlement notice to address the misleading statements in the James letter outlined
12 above. (Dkt. No. 54 at 2.) Engelland argues that the proposed corrective communication
13 "smears" class counsel because the corrective communication states that James's letter
14 mischaracterizes Court orders. (Dkt. No. 55 at 20–21.) Engelland also argues that the proposed
15 corrective communication "brand[s] prospective class counsel as a liar" because it states that
16 James is prohibited from contacting the putative class until September 12, 2106, due to his
17 misrepresentations in the July 28, 2016, letter. (*Id.* at 22–23.) The Court agrees that a corrective
18 communication is necessary and appropriate because of James's numerous misleading statements
19 in his July 28, 2016, letter (Dkt. No. 50 at 5–8). Engelland's arguments are irrelevant because
20 they are grounded in the erroneous belief that James's letter was not misleading or improper. The
21 proposed corrective communication does not smear class counsel. It accurately states that James
22 mischaracterized Court orders, as the Court finds in this order and found its order granting a
23 temporary restraining order. Further, prospective class counsel is not branded as a liar. It is true
24 that James is prohibited from contacting the putative class until September 12, 2016, because of
25 his misleading letter. Putative members' potential distrust of James is an unavoidable
26 consequence of his improper communication.

ORDER GRANTING DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND
CORRECTIVE COMMUNICATION
PAGE - 8

The Court orders that the following alterations be made to the proposed corrective communication:

In bullet point four beginning with "Mr. James' letter states the parties reached their settlement in 'secret'" Cobalt must strike the phrase "well-respected." The Court never made such a finding.

Cobalt must also change all possessive "Mr. James'" in the letter to "Mr. James's" to conform to proper grammar rules. *See* The Redbook: A Manual on Legal Style § 1.77(a), at 48 (2d ed. 2006) ("If [a word] is singular and ends in –s, add –'s unless the result would be truly hard to pronounce.").

As outlined above, the Court finds that James's letter was misleading and potentially confusing to putative class members. In order to remedy those improper and misleading statements and to minimize the harm they may cause, the Court exercises its discretion over communications related to this case by ordering that a corrective communication in the form of Exhibit A to the motion, with the Court's two stated alterations, be sent to putative collective members who received the letter from James.

**III.   CONCLUSION**

For the foregoing reasons, Cobalt's motion for a preliminary injunction (Dkt. No. 49) is GRANTED. Accordingly, Engelland and his counsel are hereby PROHIBITED from further contact with the putative class discussing the *Grewe* settlement, including communications that discourage settlement participation, until September 12, 2016.

In addition, Cobalt's motion for corrective communication (Dkt. No. 54) is GRANTED. Engelland and his counsel are hereby ORDERED within three calendar days of this Order to provide Cobalt's counsel with a list of individuals to whom James's July 28, 2016, letter was sent. For all individuals on that list who are also putative members in this case, the settlement administrator is hereby ORDERED to include a cover letter consistent with the form attached as Exhibit A to the motion (Dkt. No. 54 at 8) and the Court's two alterations with the Court-

1  approved settlement notice.

2      DATED this 1st day of September 2016.

```
                                        _____
                                        John C. Coughenour
                                        UNITED STATES DISTRICT JUDGE
```

ORDER GRANTING DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND
CORRECTIVE COMMUNICATION
PAGE - 10